Andrew Ward v. Appellant Ron Hines Okay, Mr. Ward, take it away. Good afternoon, Your Honors. Andrew Ward for the Appellant, Ron Hines. May it please the Court. This case is about a retiree sitting in his den, emailing advice about how to take care of animals. He doesn't examine the animals because they're scattered around the world. Many of these animals have no other option and are never going to be examined. Even so, the government thinks, and this is page 32 of their brief, that Dr. Hines' failure to conduct a physical exam to quote, raise concerns about the propriety of the advice he rendered. Your Honors, advice is protected speech even if the state thinks it's bad. The state's argument seems to be that speech isn't speech. If you're talking about something important, that's wrong. The Supreme Court has held that giving individualized legal advice to foreign terrorists is really protected speech. So giving individualized animal advice to foreign pet owners certainly is too. This is a First Amendment case. Strict scrutiny applies, and the Board hasn't tried to meet that standard, which it can't. The First Amendment doesn't allow the state to keep people in the dark for their own good, no matter how much it would prefer that they get advice from the state's approved sources. To start at the beginning, this is a case about speech, not conduct. The District Court got that exactly right. The physical examination requirement applies to conduct in general, to surgery, to giving out prescriptions, but this is an as-applied case about a retiree emailing advice, and advice is speech. The case for that is Order vs. Humanitarian Law Project. That was also about a law that generally restricted conduct, prohibiting material support to terrorist groups, guns, weapons, munitions, but it also prohibited the advice of lawyers who wanted to give those terrorists individualized advice. And the Supreme Court said that if the conduct triggering coverage under the statute consists of communicating a message, then the First Amendment applies in full force. That's Humanitarian Law Project at page 28. You can see that more recently, and you can see it in a lot of cases, but you can see it more recently in a case like 303 Creative. That was about an anti-discrimination law. It applies to who businesses have to serve. That's generally about conduct. But as it applied to someone who made websites, as it applied to images, words, symbols, to communicate ideas, that was a First Amendment case, too. How is this requirement, though, not going to fail everywhere it's applied to licensed vets? Well, I think this is an as-applied case. But it is. I guess what I'm grappling with, I don't dispute that this is not a facial challenge. It's an as-applied challenge. I'm just struggling if it's as unconstitutional as applied here, how is it not also going to be unconstitutional pretty much everywhere it's applied to all licensed vets? I think it might be in a different case. The state can meet its burden under strict scrutiny. It did that in Humanitarian Law Project with real evidence of specific harms. But that's not the record here. That's true. Because the state had every opportunity to put forward evidence to sustain its burden. Its expert looked through the entire literature, and she couldn't find an example of an animal ever being harmed by this sort of advice anywhere on the planet. It might be difficult. There were conclusions in the affidavits, I thought, that said, well, the animals here, specifically in specific cases, would have been worse off because of the advice given, because of the lack of the physical examination. The experts did say that it was either likely or possible, depending on the specific case, that Dr. Hines made those animals worse off. I think it is preposterous that with a pigeon in Iran, that actually that some advice from someone with decades of experience is actually going to be worse than no advice at all. But taking that they did say that, that dispute is not material. The state having an expert say that speech is bad is not enough under the First Amendment. They're not really saying speech is bad. It's just saying that the quality of veterinary care that's offered without the physical examination can be not only inferior to care added with physical examination, it could be actually deleterious. That is their testimony. This sort of substantiates the state's interest, but I guess if we're going to apply strict scrutiny, as you suggest, we don't even get there, right? This thing just falls. I think it does fall because – How does licensing in general not fall? Licensing in general doesn't fall because most licensed occupations consist of conduct. No, no, this is speech. Every time I go to a doctor, every time I go to a lawyer, every time I go to a veterinarian, the veterinarian is going to communicate to me via telemedicine at this point because there won't be any way to require a physical examination. They're going to tell me what they think. That's speech. It is speech, and when you have someone who is doing pure communication, communicating a message, it is not relevant whether that constitutes the practice of a profession. That's what I mean. That's what I mean. You're basically arguing to undermine the entire licensing regime that Texas and every other state imposes on certain professionals. I don't think that only in as much as it is trying to regulate speech. Again, that's often a regulation of conduct, but in a purely as-applied case, you have something like the Upsolve case that we cite in our brief where laypeople were giving advice about debt collection. That happened to be the practice of the law, but it was still communicating a message. It was a content-based restriction as applied, and so the First Amendment applied, and strict scrutiny applies. You see the same thing in the Nutt case in our 20-G letter. You had someone writing a report. Technically, that was the unlicensed practice of engineering, but he was communicating a message about the design of a drainage system, and the court there said strict scrutiny applied too, and that's not strange, Your Honor. The Supreme Court in NIFLA stressed that it has long protected the First Amendment rights of professionals, including lawyers in cases like Humanitarian Law Project and including medical professionals, because information matters. Information can save lives, as it likely has done here. Under strict scrutiny, this is an easy case for Dr. Hines. What do we do with, you say it's a case of pure expression, but the board sees it differently. They talk about Dr. Hines' conduct. They talk about reviewing records, evaluating the diagnoses provided by other veterinarians, reviewing the propriety of drug doses, et cetera. Do those actions show that Dr. Hines was doing more than just speaking? No, Your Honor, because those actions are either reading, which is also protected by the First Amendment. I mean, that's been true since at least Stanley versus Georgia in the 1960s, or otherwise thinking thoughts. I mean, the board's problem here is that he's giving advice to people around the world because they want to hear from him, and the board thinks that advice won't be sufficiently informed. That's a content-based distinction. You know, Reed versus Town of Gilbert says that government regulation of speech is content-based if the law applies to a particular speech because of the topic discussed. And Dr. Hines can talk about what's going on in India. He can talk about dogs in India. But if he tells someone something about a dog that got run over in India, very sadly, the board says that's illegal because they don't trust the quality of his advice. But I'm just struggling to discern the line here between valid licensing regimes. Become a veterinarian. You've got to get a veterinarian's degree. You've got to take whatever licensing tests there are, and you've got to get certified to be a veterinarian. And what you're talking about, where's the line? I think the line is the line that the Supreme Court put forward in NIFLA, that it's the line between speech and conduct. That was compelled speech, though, right? That was you must say this. Nobody in Texas is telling Dr. Hines what he can and can't say. Well, I think they are prohibiting speech on a specific topic. Well, they're prohibiting the practice of veterinary medicine without authorization. And as a point, he is just communicating a message. And I think, Your Honor, that the case that NIFLA's compelled speech is different is this is a line where this court took those principles and said that whether or not something constitutes the practice of a profession, their licensed surveying doesn't matter. The question is whether the plaintiff is engaged in speech or conduct. The government will have wide authority to regulate all sorts of conduct in the real world. I have a question about just the mechanics of the physical exam requirements. So is a physical exam required? This may be a question better for the state. I don't know. Is a physical exam required every single time a veterinarian offers medical advice about pet care? Does it apply to a preexisting relationship where they have seen the pet in person and then they later get a call on the weekend, hey, my cat Cujo is suffering X, Y, Z. And you saw him last week about this. So what should we do? It's the latter, Your Honor. And the fact that an exam could have sufficed years ago and that someone who has happened to have seen an animal could give advice the same way as Dr. Hines is doing now. So there has to have been a physical exam. The physical exam could have occurred years or a decade or more previously. My friends might have a different answer. That appears to be all the statute requires. I think that's one of many reasons why the government can't meet. And then a pet owner could call later and say, hey, my pet is exhibiting these symptoms. You saw this pet five or 10 years ago about something unrelated. But what should I do here and now about this? That appears to be allowed under the statute. You know, this is a law that ultimately criminalizes the defendant's own experts' call-in radio show. I don't think there could be anything clearer to show that this is a restriction on speech than the fact that it criminalizes a call-in radio show. No, it doesn't. A call-in radio show or a lawyer on the TV news or whatever, those are fine things if they answer questions generally and they disclaim any practice of law. I'm not advising you. There's no client relationship, anything like that. In other words, lawyers can talk about general things to the Rotary Club, but they can't give legal advice in a state in which they're not licensed. But both of those things are speech. Well, that's not quite what happened here, the state's expert, Dr. Teller. I'm not talking about here. I'm talking about generally because, again, this ruling is going to have huge repercussions potentially if we say this is protected speech and this licensing regime falls under strict scrutiny. Again, I think whether the speech is important goes to whether the government can meet its verdict. But it's really putting the cart before the horse to say that that's how you decide whether the First Amendment applies. The First Amendment applies if the person, you know, what triggers coverage under the statute is communicating a message. Speech is still speech. But Reed allows, I think, even the regulating entity to look at the content of the speech to a degree to determine is it covered, is it not covered. That is allowed to a degree. But both Reed and then city of Austin after Reed are clear that if speech applies to a particular topic only, that is a content-based restriction. And there's a separate rule from— It doesn't apply to a topic, though. It applies to specific veterinary advice about treating a specific animal. I think that is a topic, but there's also the separate rule from, you know, Why they have been litigating this case for 10 years is that they think he doesn't have sufficient knowledge. They think his advice will be bad, and people will be convinced to act on advice that the state thinks is uninformed. You know what the state has said is this physical examination requirement validates important state interest. It increases the quality of care, for one thing. And therefore, all licensed veterinarians are subject to this physical examination requirement for an initial consult. Perhaps that sort of analysis would be more appropriate in a facial challenge. But on this record, the state has not met its burden. I think under any form of First Amendment scrutiny, and maybe the best case for that, from our reply brief, it was a good one, that the plaintiff there had never actually implicated the state's interest in health and safety and the disposal of animal bodies that he was sacrificing. There was no dispute that he hadn't actually caused problems in over a decade of doing it. And so this court said that the state hadn't met its burden. But even under intermediate scrutiny, I would commend to your attention Ed and Phil would be famed. The record there that the state put forward to justify a ban on accountants soliciting is almost identical to the record the state put forward here. There were no studies. Other states allowed that speech. There weren't really anecdotes. There wasn't information about the plaintiff's own conduct.  Accountants soliciting business is different than accountants advising businesses outside their licensed jurisdiction. I think perhaps that's true, and the state might be able to restrict each differently. But my point is that as applied in a First Amendment case to a restriction on speech, the government has to do more than just have a member of the profession say, I think this could be a problem. When that same record reveals those experts looking for the problem and not finding it ever anywhere on the planet, I don't think the government could possibly meet its burden on that record. I'm just juggling. I'm sorry, but I'm thinking about all my years in the legislature, three of them I guess, where we constantly were legislating, being lobbied to legislate about telemedicine and the reach of telemedicine, what nurse practitioners can do versus doctors versus dentists versus dental hygienists. All these regulations, I'm afraid, would be infirm under the same argument you're making here as applied to anybody who wanted to practice telemedicine, for example. We were wasting our time, I guess. I don't think that, again, I don't think that's a question of whether the First Amendment applies. I think speech is speech, and there is a different question whether the government can meet its burden. But the government isn't powerless. None of this applies to conduct. And even the government can meet its burden. It did that in Holder v. Humanitarian Law Project. It has any number of options. There are certainly kinds of speech that are just outside the First Amendment. It can criminalize fraud. It can impose disclosure requirements. And in the rare case, like Humanitarian Law Project, where there is real evidence of a real harm, it can meet its burden. But it hasn't done that in this case. This is a case about people getting second opinions about a cat in Glasgow or how to help a bird in Iran. Texas doesn't have a compelling interest about that. It hasn't shown that Dr. Hines has caused the kinds of grave abuses endangering paramount interest that's necessary to restrict speech under the First Amendment. What this is all about is, you know, it's just telling adults where they can and can't get information. The solution to that, if the government thinks speech is bad, is more speech like the kind from its own expert that she gives out on the radio show without examining animals, the same as Dr. Hines, because that is a normal and useful thing to do. More speech is the solution, not enforced silence. Okay, Mr. Ward, thank you. We'll see you back on rebuttal in a few minutes. Mr. Green, good afternoon. Good afternoon, and may it please the court. No one has a First Amendment right to be a veterinary. This case is not about suppressing Dr. Hines' speech. It's about weaponizing the First Amendment to override the state's judgment regarding best veterinary practices. Following the recommendation of the American Veterinary Medical Association, and like 44 other states, Texas requires a veterinarian to physically examine an animal before treating it. And after the exam, the veterinarian may provide any care that he deems fit. Hines' right to practice veterinary medicine claim, dressed up as a First Amendment claim, should be rejected outright. But if the court does believe that the physical examination requirement directly restricts Hines' speech, the law should be upheld under intermediate scrutiny. The Supreme Court has long recognized states' broad authority to license and regulate the practice of professions. Hines' initial due process challenge to the physical examination requirement was rejected by this court under those precedents. Hines 1 recognized that the physical examination requirement is rationally designed to improve the quality of care for animals. The result should not be different here based on Hines' effort to rebrand his veterinary practice as speech. As NIFILA and this court reiterated in Visalign and Hines 2, the First Amendment does not prevent restrictions that are directed at professional conduct from imposing an incidental burden on speech. And here, the physical examination requirement restricts the practice of veterinary medicine, which boils down to diagnosing and treating animals' injury and disease. Do you take issue with the district court's conclusion that this was regulating speech? Yes, we think that was wrong because even though diagnosing and treating animals may require the use of words, it doesn't change the fact that Texas is regulating a course of conduct, not any message, idea, or content. It's no different than when the state criminalizes the acts of rivalry or conspiracy, which also use words to complete an action. Do you agree, though, that to get to the conclusion that the state reaches here, the state has to go in and discern what the content of the speech is? There's basically, I guess, some sort of sliding scale, according to your experts, about when it gets specific enough to just to become advice as opposed to general opining about topics, I guess. We can look at the course of care and see if it crosses into the world of practicing veterinary medicine, and that's okay. But aren't you really looking at the speech here? Yeah, you can be, and that's the Reagan National Advertising case said that just like when you look at speech to see if it's solicitation, you can look at speech to determine whether it falls within a prohibited action. And when Hines practices veterinary medicine, he's not engaging in pure speech. The complaint and the record show that Hines diagnoses animals and provides treatment plans for them. He examines medical records. He diagnoses conditions and injuries like broken bones from pictures. He even diagrams the construction of braces and bandaging for owners to apply, which is something that you would do obviously in person if the examination requirement were happening. How are the types of things you're listing that Dr. Hines does in regard to animals? How are they different than what a regular MD might do via a telemedicine appointment or a Zoom appointment with a human patient? They may or may not be different. Our experts have testified that with animals, it's particularly important to have a physical examination because owners are not familiar with animal physiology the way they are with their own and can't adequately communicate what is going on with an animal the way a physical examination that a veterinarian conducts can actually inform the care, the course of care that they need. Earlier I asked Mr. Ward about the physical exam requirement. Is it required each and every time that a licensed veterinarian provides diagnostic or medical advice? It does not. It requires sufficient knowledge, which is based on a recent visit. So that's not defined by exam. Recent is not defined? It's not defined. But I think the standard of care generally is about a year. So, I mean, if you're calling about a follow-up question after you've been seen, you know, a couple days a week, two weeks later, I think that wouldn't require another physical examination. But the standard is a recently seen. It doesn't allow a veterinarian to rely on, oh, I formed a relationship with this person five years ago, so I don't have to do anything again. It is bizarre that if I have an Uncle Bernard, he can be seen via Zoom. But if I have a St. Bernard, he can't. This court already upheld the, on a rational basis analysis, the distinction between the human and the animal telemedicine requirements. So, I mean, that's no longer an issue. And I think the court discerned that it's different because, again, humans are just generally less familiar with animal physiology than human. I'll go on to note that when Dr. Hines performs these tasks, he's charging up to $58 for his services to screen out minor requests for more serious ones. And he promotes the fact that he has a license in order to provide these services. And I presumably believe that he doesn't think a layperson would be entitled to provide the various same services that he does with his license. Now, if Hines' actions are speech, then virtually every professional licensing and practice prerequisite would be subject to this First Amendment scrutiny he's asking for. Because nearly all professionals, certainly lawyers, speak as part of performing their jobs. And Hines' argument would shift the policymaking regarding the need for licensure and the tailoring of them. It would shift it from state legislatures to the courts, stripping states of their longstanding broad authority to regulate the professions. And NIFLA did not abrogate that authority. It only confirmed it by saying that when you're regulating professional conduct, that is A-OK and outside of the First Amendment. You do agree that Hines can provide general veterinary advice, just not specific, individualized? Correct. That's exactly right. And when the state first investigated Dr. Hines and reached an agreed order with him, it made clear that generalized advice is OK. It's only when you form the relationship and provide targeted, specified advice for a particular owner and animal that you have to conduct a physical exam. Now, if the court does believe that the physical examination requirement directly regulates Hines' speech, and again, we don't believe that that's the case, but if we're in that world, the requirement should be subject to intermediate scrutiny because it's content neutral. It's content neutral because it was designed to advance governmental interests that are not related to suppressing any message or idea. Again, the laws at issue here were enacted in the wake of the American Veterinary Medical Association recommending in its model rules that there be a physical examination designed to protect animal welfare, promote confidence in veterinary licensure, and prevent the spread of disease. And as the district court found, the application of the examination requirement has nothing to do with whether the board agrees or disagrees with the actual care that the veterinarian provides. It's just whether they were providing care at all. Indeed, the veterinarian could provide the very same care after a physical examination that they couldn't provide before, but they need to conduct the exam first to make sure that the care is as good as can be. Again, if practicing veterinary medicine is a speech topic, then all professional licensure requirements are going to be subject to strict scrutiny, as your honor seems to acknowledge, and that flies in the face of state's broad authority to regulate the professions. Now, if we are in the world of intermediate scrutiny, the laws withstand it. First, they will advance Texas's interests by reducing the risk that our veterinarian will misdiagnose and potentially harm an animal. And that's common sense, and it's supported by the record. The state's principal expert, Dr. Patterson, explained that a physical exam is necessary to localize the nature of an animal's problem. And studies show that apparently healthy animals like cats and dogs have conditions that are only discoverable through a physical examination. Dr. Patterson also pointed to cases from her own practice and experience showing the importance of a physical examination. In one such instance, which we talked about in our brief, owners had called into her clinic talking about a cat that they thought was lethargic as a result of a recent tick treatment that it had taken. But it turned out that upon physical examination, the cat had a urinary blockage that would have killed the animal if it had not been alleviated immediately. Dr. Patterson and Dr. Teller, the state's other expert, also testified about how Dr. We discussed a few of those in the briefs. The states did not need to prove that Hines definitively harmed an animal under intermediate scrutiny. Reasonable prophylactic legislation that serves to reduce the risk of harm withstands intermediate scrutiny. And that's Turner Broadcasting and other cases that we cited. And to prove an actual harm would be particularly difficult, considering that it's largely illegal for veterinarians right now to conduct, to perform telemedicine without first conducting a physical examination. So instances are going to be difficult to prove in your fallback. Just rewind in about three minutes or so. So the state's fallback was intermediate scrutiny and that is content neutral. Help me with this. So whether the law applies and how the law applies seems to make a distinction, at least in my mind, based on the content of the speech. If the speech is specific, individualized, you know, tethered to a specific animal, then it's not allowed without an exam. But if it's general advice, then no exam is needed. So how is that content neutral? Well, it's about the course of care. It's not just about the words that the veterinarian says. If you're applying a course of care for a particular animal, then, yes, you need to conduct a physical exam. But if you look at the case that they cite that requires strict scrutiny, that's a signed code case where there's distinct topics of speech and they're subject to differing restrictions. There's nothing like that here where we have a facial sort of categorization of different speech types that are subject to different restrictions. You have to look to the governmental purpose when there isn't a facial categorization of speech types. And, again, the purpose here is to provide the best care for animals. It's not to suppress any particular message. The way we know that is that, again, the veterinarian can provide the very same care, including whatever advice the veterinarian seeks to provide, after the physical exam that can't be provided before. So this isn't about banning a particular type of message to anyone. You're brief, and tell me if I misread it. It seems to argue that the First Amendment doesn't apply at all here. Did I misread that, or is that the state's position? That's correct. If you're not regulating speech, you're regulating conduct. There's no First Amendment. You see no clash between the assertion that the First Amendment has no place here. You see no clash between that statement and NIFLA. Well, NIFLA, no, not at all. Again, NIFLA was a compelled speech case where there's no question that California was requiring these licensed professional pregnancy centers to provide a message that they disagreed with. It said you had to tell folks about the availability of abortion in California. They didn't want to say those words. The court said, professional, when you're directly regulating the content of professional speech, either forcing them to say something or restricting them from saying particular messages, that that is subject to the First Amendment. But we're not in that world here because we're talking about professional conduct, which NIFLA plainly carves out and says, when you're talking about a conduct regulation, we're not in the world of First Amendment scrutiny. But going back to the world where we are in some sort of First Amendment scrutiny, we've met the first element by showing that, again, of intermediate scrutiny, that there's a real potential harm here. Does this survive strict scrutiny? It's a harder case, obviously. We think it's the same. We think that it would because the Supreme Court has recognized that the state has a compelling interest in regulating the practice of professions. And we have testimony from our veterinarians saying that, in every case, the physical exam is required to provide the best possible care that it is. But we understand that it's obviously a much harder burden. And if the court thinks strict scrutiny is applicable, which we obviously don't, if it does, it probably would make sense to remand to have the district court take the first shot at that because the district court found that intermediate scrutiny was the proper prism to view this. And, of course, we think no scrutiny. Second argument would be intermediate scrutiny. But we don't think strict scrutiny applies, but it probably should be reevaluated if this court disagrees. The final element of intermediate scrutiny, just to jump back to that, is the reasonable tailoring test. That's to make sure that we're not overburdening speech, but still meeting the state's goals. The examination requirement applies only when a person is practicing veterinary medicine, doesn't apply to generalized information about veterinary health. And the experts here agree that, actually, the bulk of Heinz communications did not even constitute the practice of veterinary medicine and so wouldn't have been subject to the examination requirement in the first instance. But the experts did agree that in each case where Heinz was practicing veterinary medicine, that a physical exam was necessary to meet the standard of care. Dr. Patterson again testified that there are no situations, even in emergencies, where a veterinarian can adequately provide advice without first physically examining an animal. That said, Texas does carve out an exception for emergencies where the veterinarian deduces from afar that there's a chance of death or severe suffering. But, again, that's these very narrow cases that are being carved out. So if there aren't any further questions, the court should affirm the district court's judgment rejecting Heinz v. McClain. Okay. Thank you, Mr. Green. Mr. Ward, I think you've reserved a whopping three minutes for rebuttal. To the extent the state is saying that Dr. Heinz is doing what this profession is and that makes his speech conduct, that's the professional speech doctrine that's clearly prohibited by NIFLA and by Visalign. To the extent they're saying that something about what this is is conduct, that is a labeling game. Dr. Heinz is communicating a message if anyone else sent an email saying you should feed your dog one of these prescription hypoallergenic diets, that would obviously be speech. Incidentally, the state's experts say that's illegal, too, if a layperson does that. Giving advice is communicating a message. That is speech. A diagnosis is just an opinion with a reasonable degree of confidence about something that's wrong. Drawing a picture is obviously also communicating a message. Constitutional rights do not turn on the government's ability to re-label. That goes all the way back to NAACP v. Button. The 11th Circuit has this exactly right. Any case about medical advice, the Otto v. Boca Raton case, if speaking to clients isn't speech, the world is truly upside down. I think that the 11th Circuit could hold that. Applying the First Amendment and strict scrutiny to medical advice shows that the sky is not going to fall. Again, this is an as-applied challenge. It is not about conduct at all. But if the state is going to regulate pure speech, it has to meet the standards of the First Amendment. There's nothing strange about that. The Supreme Court in NIFLA says it has long protected the First Amendment rights of professionals. That is why you see the 11th Circuit applying these same principles that we're articulating to advice that is medical from doctors in the Wolfschwager case, in the Otto v. Boca Raton case. The 9th Circuit did that in the Conan v. Walter case that we cite in our briefs. You have the Southern District of New York applying these principles to speech that is technically the practice of law. In UPSOLV, you have the 4th Circuit applying these principles to the speech of tour guides, which a state in the 4th Circuit had decided to license. You have it in the NUT case, where the speech happened to constitute the practice of engineering. And you had it in the humanitarian law project, where the Supreme Court said, this is individualized legal advice, but it is still speech. That means normal First Amendment rules applies, even if lawyers want to give individual legal advice to terrorist organizations. The state could meet strict scrutiny in that case, but it was normal First Amendment rules. If the state wants to regulate speech, the rules are different than if it wants to regulate conduct. It has to meet the standards of the First Amendment. There is nothing radical about that. There is something radical about saying that adults can't get an opinion from someone that they want to talk to. For all those reasons, we ask the court to reverse and remand with instructions to enter judgment for Dr. Hines. Okay, Mr. Ward. Thank you. Thanks to both sides for the able advocacy. We appreciate it. The court will stand adjourned until 10 a.m. tomorrow morning.